Johan Bronge

Pro Se

26 January 2024

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, et al. | Case No. 22-10964 (MG) |
| | (Jointly Administered) |
| Debtors. | Appeal |
| | Case No. 23-cv-10638 |

**APPELLANT'S REPLY TO** POST-EFFECTIVE DATE DEBTORS' MOTION TO DISMISS AND RESPONSE BRIEF TO JOHAN BRONGE'S APPEAL OF THE CONFIRMATION ORDER

Your Honor,

I, Johan Bronge, the appellant and pro se creditor in the above-mentioned case, hereby submit this reply to post-effective date Debtor's response brief in the case 23-cv-10638.

**I. Introduction**

The post-effective date Debtor has filed a long response to my Opening Brief, again without properly addressing the evidence regarding the collateral ownership question. Neither do they address the arguments regarding Earn account submission and claim I have not argued for this claim. In addition, the post-effective date Debtor is claiming my Appeal to be equitably moot and therefore the Appeal should be dismissed. I will address these matters below.

## II. The equitable moot argument

I am a non American, pro se creditor without the funds required to retain legal counsel in these proceedings. I can and do, only represent myself. My Appeal is therefore only in regard to my own assets and a successful Appeal does not necessarily have to be applied to other creditors. The Bankruptcy Court has already singled me out and specifically stated, quote; "Accordingly, Mr. Bronge's assets transferred to the Borrow Program under Version 7 are property of the Debtors' Estates." (EFC# 3974 page 23) In view of this and the practicality and fairness the post-effective date Debtor refer to, I humbly request Your Honor to be lenient in regard to any procedural shortcomings.

1. In respect to the equitably moot issue I state that I have voted no to the plan and class settlement, consistently argued for the collateral being my property and objected and filed motions for appropriate relief well before and after the confirmation order. With this in mind I would have expected the Bankruptcy Court to have stayed the process if such requirement was deemed appropriate when I filed my Appeal. My motions (EFC# 3649 and 4009) have, as far as I know, not even been answered and I therefore believe the requests for relief to be open. As a pro se, non-lawyer creditor, I was not aware a separate stay request is a requirement when filing an Appeal. I believed these open requests for relief and my Appeal would be enough to satisfy or function as a stay request. If a stay request was required, it certainly would have been appropriate for the Bankruptcy Court to at least have mention this requirement in conjunction with my Appeal, considering it is aware I am not a lawyer and unfamiliar with American bankruptcy procedural requirements.

2. If Your Honor, despite the above, find the equitable moot argument to have merit, I argue that at least for the collateral ownership and valuation issues, the five circumstances mentioned by the post-effective date Debtor are present;

    (a) The Court is still able to order effective relief regarding ownership of my collateral as the amount of BTC involved is minute in relation to the post-effective date Debtor's available assets;

    (b) the amount in question is small enough to be covered by any held back assets and would not have any discernible impact on the the post-effective date Debtor as a revitalized corporate entity. In fact, it is even less than many of the requests for reimbursements for significant contributions and professional fees from other creditors

and this equitably moot argument has not been raised in conjunction with those requests despite the impact on the post-effective date Debtor would be larger if such requests were approved;

(c) the requested relief is small enough not to require any unraveling of transactions;

(d) the requested relief is small enough not to have any impact on any party except a negligible effect on the post-effective date Debtor who obviously have been informed;

(e) within my capacity as a pro se creditor and a layman, I have pursued all, what I understood to be available, remedies in order to obtain relief. If I have failed to properly adhere to or request appropriate remedies, this failure do not create a situation rendering it inequitable to reverse the orders appealed from.

## III. The Collateral ownership argument

Your Honor, the post-effective date Debtor response brief is to me unclear and mainly a rehash of it's previous arguments. The issues become obfuscated and unclear by referencing non-existing clause (grant of ownership clause) and mixing versions of agreements. The claim that particular and fundamental evidence have been addressed has no exact reference and I am not even able to find the referenced document on Stretto docket (point 29 in post-effective date Debtor's response brief).

I have already addressed all the points they bring forward in my filings and in the Opening Brief so I will spare Your Honor another rehash of these points. However, I will here make another effort to focus in on the core issue by specifically examine the controlling language in each relevant versions of Loan Agreement and TOS.

1. *Loan Agreement version 7*

    (a) The operative language as per the MEMORANDUM OPINION APPROVING THE CEL TOKEN SETTLEMENT AND RESOLVING ISSUE OF COLLATERAL OWNERSHIP IN THE MODIFIED JOINT CHAPTER 11 PLAN OF CELSIUS NETWORK AND ITS DEBTOR AFFILIATES (EFC# 3974) seems to be at the heart of this matter and is the following (EFC# 3974 page 20);

    **"In consideration for the Loan, you grant Celsius the right, subject to applicable law, without further notice to you, to hold the Digital Assets provided as Collateral in Celsius' name or in another name, and to pledge, re-pledge, hypothecate,**

**rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership, and for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets at Celsius' own risk."**[1](my bold emphasis)

This language does not transfer legal ownership title as I have extensively explained and evidenced in my filing docket EFC#3908 *and the Bankruptcy Court Judge has also so concluded in his Earn ruling*, even if he and the post-effective date Debtor do not acknowledge this fact. I request Your Honor to carefully examine the following language in the aforementioned Earn ruling (EFC#1822  page 38-39). It is substantively, and in all relevant parts, *the same language as referenced above* and it is determined *not to transfer title*. Quote;

"Terms Versions 2–4 contains the following text that discusses ownership, ***but not transfer of title*: In consideration for the rewards earned on your Account and the use of our Services, you grant Celsius the right, subject to applicable law, without further notice to you, to hold the Digital Assets available in your account in Celsius' name or in another name, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets, separately or together with other property, with all attendant rights of ownership . . . . You acknowledge that with respect to assets used by Celsius pursuant to this paragraph. (i) You may not be able to exercise certain rights of ownership."** (my bold and cursive emphasis)

Nowhere in this Loan Agreement version 7 is there any mention of legal title transfer of collateral but instead statements that Celsius have a security interest in the collateral or that the collateral is subject to a pledge for Celsius benefit. (examples are found in EFC#393 page 858 Definitions; page 862 Collateral under item c; page 869 Conditions to Lender's obligations under item e) Additionally, numerous mentions of referring to 'your collateral' is present. (See EFC#3908 "General discussion regarding Legal Ownership in Collateralized Loans" pages 3-5 for relevance of the above)

Your Honor, I fail to understand how there can be any ambiguity or even questions with regards to ownership of legal title of collateral under this Loan Agreement.

---

[1]Below this paragraph in docket 3974 page 20 is an example of how the Debtor introduces a new name for this paragraph. This new name has implied attributes that do not exist in the original name of the clause. No such "Grant of Ownership Clause" exist in any of the Loan Agreements nor in the relevant TOS. Similar behavior of the Debtor is discussed in filing EFC#3649 page 4 item G

The post-effective date Debtor, the Debtor and the Bankruptcy Court has, as far as I know, never addressed this evidence that makes it is clear and unambiguous that legal title of the collateral remains with the borrower. The post-effective date Debtor's arguments regarding legal title of collateral in this version 7 should therefore be dismissed.

2. *TOS version 5*

    Relying on the previous paragraph, it becomes obvious that the last sentence in the paragraph 4. Nature of e-Services, B Loans (EFC#393 page 188-189) is highly significant as it simply negates this paragraph as it relates to title ownership of collateral since Loan Agreement version 7 does not support the statements regarding collateral title ownership.

    Quote; "...... **In each case the matters expressed above shall be set out in the Loan Agreement and nothing in this clause 4B shall be taken to modify, supplement or otherwise impact the Loan Agreement between you and CNL."** (my bold emphasis)

    There is no further mentioning of collateral ownership or title transfer of collateral in this agreement.

    Based on the above examination of the Loan Agreement version 7 and TOS version 5, it is conclusively and unambiguously clear that my collateral for my Loan 31904, governed by Loan Agreement version 7 in combination with TOS version 5, is my property and I have never relinquished legal title to Celsius. The post-effective Debtor's and the Bankruptcy Court arguments to the opposite should be dismissed.

3. *Loan Agreement version 9*

    In this version of Loan Agreement the clause "Consent to Celsius' Use of Your Digital Asset" contains essentially the same language as in Loan Agreement version 7 (EFC#393 page 942). The only difference is in item 1 that reads, quote; "You may not be able to exercise any rights of ownership". The change of word from 'certain' to 'any' still only refers to rights and not to title so in essence this language also does not transfer title.

    Under item Collateral in EFC#393 page 936 the following language has been added;

quote; "Digital Assets posted as Collateral shall be the exclusive property of Celsius, and you grant Celsius your explicit consent to use such Digital Assets in accordance with Section 20 below, for the full term during which such Digital Assets are posted as Collateral". Despite there is no explicit statement regarding legal title transfer, this language may be construed to mean that such transfer is intended. However, this statement does contradict language in "Consent to Celsius' Use of Your Digital Asset" and several other statements in Loan Agreement that indicates no title transfer has taken place. (EFC#393 page 932 Definitions item 4; page 940 Borrower's Representations first sentence and item 1: See also EFC#3908 point 23 and its referenced documents).

It is clear from the above that there may be some ambiguity regarding legal ownership title of the collateral in this version 9. However, I refer to my filing EFC#3908 point 23 and it's referenced documents for a thorough discussion of this issue, concluding that when external evidence is considered, also in this version 9 of Loan Agreement, the borrower do not transfer legal ownership title to Celsius. The post-effective Debtor's and the Bankruptcy Court arguments to the opposite should therefore be dismissed.

4. *TOS version 7*

This version of TOS is different from version 5. However, language of interest in regards to collateral are found in EFC#393 page 407, Quote; "....Celsius or its Affiliates shall hold the Digital Assets provided as collateral under the Fiat Loan Agreement for the benefit of the Lender subject to the terms hereof, including without limitation Sections 9, 10 and 13." and further down on the same page, quote; "Any Eligible Digital Assets you provide as collateral under a Fiat Loan Agreement shall not generate Rewards for your benefit". These two sentences makes it clear that the collateral *is held under the Loan Agreement* and does not generate any rewards. It does not state the collateral legal title has been transferred or that collateral is owned by the Debtor. Furthermore, in clause "13 Consent to Celsius' use of Digital Assets", EFC#393 page 420-421 it is clear that *all conditions in this clause are in consideration for rewards received* so they do not apply to collateral. (see Opening Brief page 3).

The ambiguity that may exist in the combination of Loan Agreement version 9 in combination with TOS version 7 is resolved by examining extrinsic evidence and it

then becomes clear the borrower retains the legal ownership title also under this combination of agreements, see EFC#3908 point 23 and it's referenced documents for this rational.

Based on the above examination of the Loan Agreement version 9 and TOS version 7 it is conclusively clear that the collateral for my Loans 141539, 141544 and 141558, governed by Loan Agreement version 9 in combination with TOS version 7, are my property and I have never relinquished legal title of the collateral to Celsius. The post-effective Debtor's and the Bankruptcy Court arguments to the opposite should be dismissed.

5. *Case Law In Secured Leverage Grp. v. Bodenstein, 558 B.R. 226, 237 (N.D. Ill. 2016), aff'd sub nom. 866 F.3d 775 (7th Cir. 2017).*

    The post-effective date Debtor reference the above case law and use it as support for their claim that the collateral should be the post-effective date Debtors' property. However, in this referenced case, the debtor was a trading broker firm, facilitating or performing currency trades for customers and for customers' benefit, using margin trading to generate yield for customers. The context is therefore very different from a straight collateral loan agreement, where customers are not trading for yield or where any use of collateral is not for the customer benefit but solely for the debtors benefit. In the Celsius' loan agreements, customer provides funds as security for a loan and pays an interest on that loan. No margin trading is specified as an agreed use. Any agreed use of the collateral is purely for the lender benefit and risk, and this is stated in the loan agreement and in the risk disclosure. Therefore, the context of that case has little or no relevance to the loan agreements I have with Celsius and should be dismissed and disregarded as supporting the post-effective date Debtor arguments.

### IV. Conversion rates and valuation of Collateral

1. I maintain that the collateral I posted as security for my loans are my property and not property of the post-effective date Debtor's estate. Therefore there should not be any requirement to convert BTC to fiat currency. The full collateral, in BTC, should be returned to me upon return of loan principal and accrued interest.

If any valuation of my collateral is deemed required, it should be done by using market prices at conversion as specified in Loan Agreement version 7 and 9 (EFC#393 pages 871 and 943, Conversion rates). If it deemed appropriate to use petition date price, this price should be maintained for any and all conversions including set off. *No mixing of petition day price and market price should be allowed in any case.* (see EFC# 3511 page 1-2 Valuation of Collateral and EFC#3908 page 14 Valuation of Collateral for discussion and rational).[2]

## V. Subordination of Earn accounts

1. Insofar that Your Honor finds that the equitable moot argument does not have merit, I reiterate that the Earn accounts should be subordinated. In interest of brevity of this document and as stated in filing EFC#3908 page 14, 4. Subordination of Earn accounts, I refer to arguments and evidence as presented in that document and in EFC#3154 under I. pages 1-5 and EFC#3641 page 4, 4th paragraph.

## VI. Conclusion

1. Based on the reasons, arguments and evidence presented herein, in the Opening Brief and in all referenced filings, my Appeal should be upheld and my requests for relief approved. The post-effective date Debtor motion should be denied.

2. Insofar that Your Honor finds the equitable moot argument has merit in regards to Earn account subordination, I will retract the relevant request for relief but stand by the remaining part of the Appeal.

Respectfully

*[signature]*

Johan Bronge

*Pro se creditor*

Saba Tower 3, JLT, P.O box 449589
Dubai, UAE
Phone +13104093381

---

[2] Since the *loan principal* may be considered part of post-effective date Debtor estate, it may, as a compromise, be appropriate to adjust the loan principal upwards with an amount relevant to the bankruptcy losses. I have proposed such settlement to the post-effective date Debtor but they have declined to discuss the matter.